Jan'y Term,          Cunningham *vs.* Squires.          1868.

## Wheeling.

Absent, MAXWELL, J.*

### CUNNINGHAM *vs.* SQUIRES.

### January Term, 1868.

1. The supreme court of appeals will not grant a writ of prohibition to a circuit court to prohibit that court from supervising by means of a *certiorari* the action of a board of supervisors.

2. A board of supervisors is not a common law court; does not proceed according to the course of the common law, having a newly created, limited and special jurisdiction from which no appeal is allowed by statute, nor writ of error by the common law, and determining in a summary way the most important rights and franchises both as respects the people and private persons; is, and cannot be otherwise than an inferior tribunal in the strictest sense of the word, according to the 6th section of the 6th article of the constitution.†

3. The action of a circuit court on a writ of *certiorari* to the proceedings of a board of supervisors, to determine a matter of controversy on its merits, is subject to review by this court, if it errs in the matter.

This was an application by *Cunningham* to the supreme court of appeals for a writ of prohibition to the circuit court of *Braxton* county to prohibit that court from supervising by means of *certiorari* the action of the board of supervisors in the matter of a contested election for clerk of the circuit court of said county. The application was based upon a

---

*Judge *Maxwell* had advised in cause below as attorney general. Judge *T. W. Harrison* of the III circuit was called to the bench.

† "The circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals by *mandamus, prohibition or certiorari*," &c.

Jan'y Term,          Cunningham *vs.* Squires.          1868.

suggestion in writing supported by affidavit. *Squires* appeared by attorney and waived notice and a rule *nisi*, and contested the motion upon its merits.

*H. Brannon* for the petitioner.
*R. F. Fleming* for the defendant.

BROWN, President. This is an application by Cunningham to this court for a writ of prohibition to the circuit court of Braxton to prohibit that court from supervising, by means of *certiorari*, the action of the board in the matter of a contested election for clerk of said circuit court. The application is based upon a suggestion in writing supported by affidavit. Squires appeared by attorney and waived notice and a rule *nisi*, and contested the motion upon its merits.

For the application it was contended that the board of supervisors was not an inferior tribunal within the meaning of the constitution, article 6, section 6. And that even if it was such inferior tribunal still the circuit court had no supervision or control of its proceedings by *certiorari* or otherwise, because by the 7th article, 4th section of the constitution, the supervisors are the judges of the election, qualifications and returns of their own members and of all county and township officers.

As examples of inferior tribunals to which a *certiorari* lay at the common law, the following may be instanced in England: the *court leet*, the quarter sessions, the old Bailey, the sessions of the city of Rochester, two justices authorized by statute to appoint overseers of the poor, justices in *eyre*, justices of jail, justices of a county palatine, the college of physicians having a special power by statute to impose fines, &c., justices of the peace, &c., even in those cases in which they are empowered by statute finally to hear and to determine; commissioners of sewers, the courts of the Cinque ports, the grand sessions and other courts in Wales, the city courts of London and Middlesex, justices of assize, orders of conviction on the conventicle act, 22 Car., 2, chap. 1, and orders on appeal from Scavenger's rate, or-

ders of bastardy, an inquisition taken before the sheriff under a private act of parliament, 2 Bac. Abr., 163.

Examples of like inferior tribunals in the several States of the Union are too numerous and diverse to mention, such as commissioners of highways in N. Y., 32 Barb., 132; quarter sessions in Pennsylvania in laying out highways, 5 Bin., 24, 29, 482; the courts of sessions in Maine in laying out roads, 8 Maine, 292; the court of common pleas acting under the statute for the support and regulation of mills, 11 Mass., 462; the county court in N. C., Haywood, 303; justices court for trial of negroes for felony under statute in Tennessee, 2 Yerger, 173, and justices court under act for punishment of riots, &c., in Virginia, 2 Virginia cases, 269. A tribunal which is not a common law court, which does not proceed according to the course of the common law, a newly created, limited and special jurisdiction, from which no appeal is allowed by statute, nor writ of error by the common law, yet determining in a summary way the most important rights and franchises, both as respects the people and private persons, is and cannot be otherwise than an inferior tribunal in the strictest sense of the word. The board of supervisors is just such a jurisdiction, and, therefore, most unquestionably, an inferior tribunal, within the very letter of the constitution; and all the reasons and necessity which exist for the supervision and control of inferior tribunals by the court of king's bench, England, equally exists in this case and is equally within the reason and intent of the constitution, so that the said board is no less within the spirit than the letter of the constitution, giving the supervision and control thereof to the circuit court. In the case of *Mackaboy, and others*, vs. *Commonwealth*, 2 Virginia cases, 268, the general court held "that it is a general rule well established, that in cases before justices of the peace, orders, summary proceedings, and trials before newly created jurisdictions, who proceed not according to the course of the common law, and where the party cannot have a writ of error he shall have a *certiorari*." And in *Groenvelt* vs. *Burwell*, 1 Lord Raymond, 469, Holt, chief justice, said "he

agreed that the plaintiff cannot have a writ of error, because it (the college of physicians) is a court newly instituted, empowered to proceed by methods unknown to the common law, as there is no need to say *ideo consideratum, &c.*, but only *quod solvat, &c.*" He compared it to convictions before justices of peace out of sessions, upon which though error does not lie, yet a *certiorari* does lie, for it is a consequence of all jurisdictions to have their proceedings returned here (*i. e.* in the king's bench) by *certiorari* to be examined. See *Long's case*, 2 Crokes' Elizabeth, 489; *Wingfield* vs. *Crenshaw*, 3 Hen. & Mun., 253; *Commonwealth* vs. *Ellis*, 11 Mass., 465; *Rahlman* vs. *Comth.*, 5 Bin. 27; *Baltimore Turnpike*, 5 Bin., 483; *People* vs. *Van Alstyne*, 32 Barb., 134; 2 Yerger, 555. The latter case was well considered and discussed, and held that *certiorari* lay to the verdict and judgment of justices' court sentencing a negro to be hung for murder, where no writ or error nor appeal lay. To the action of the board of supervisors, no writ of error lies, and no appeal has been allowed by statute, and, therefore, by the common law a *certiorari* would lie on such case. But the constitution has not left it to the common law or judicial determination; it has been given in express terms to the circuit court to supervise and control the proceedings of all inferior tribunals. Nor is the supervisory and controlling power in the circuit courts inconsistent with the power and duty in the board of supervisors to adjudge and determine the election, qualifications and returns, &c. But on the contrary they must be taken together, are consistent and proper and the supervisory power necessary to keep the former from liability to abuse and error.

I think, therefore, that the application for prohibition should be refused, and since nothing appears to show that the cause before the circuit court is not a proper one, on its merits, to be examined there on the writ of *certiorari*, that court should be left to determine the matter of controversy on its merits, subject to review by this court if it errs in the matter. The 33rd section of chapter 100, Acts of 1863, has been referred to as showing the conclusiveness of the reso-

lution of the board of supervisors in all courts, &c., but that can have no reference to the court supervising the case any more than any other judgment appealed from can conclude the appellate court.

Judge WILLIAM A. HARRISON concurred in the result but expressed no opinion further.

HARRISON, THOMAS W., dissented but gave no opinion.

WRIT DENIED.